**Ellery Cornelius OLIVER, Plaintiff–Appellant,**

v.

**James A. COLLINS, Texas Dept. of Criminal Justice, Institutional Division, et al., Defendants–Appellees.**

**No. 89–6011**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1990.

---

57

Ellery Cornelius Oliver, Tennessee Colony, Tex., pro se.

Before KING, GARWOOD, and DUHÉ, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Ellery Cornelius Oliver (Oliver), a Texas prisoner, appeals the dismissal under 28 U.S.C. § 1915(d) of his *in forma pauperis* suit complaining of asserted violations of his constitutional rights while in prison under 42 U.S.C. § 1983 as well as related pendent state law claims.

### Context Facts and Proceedings

Defendants in this suit are former Texas Department of Corrections (TDC) Director Lynaugh; Warden Alford of the TDC Coffield Unit where the complained of incident occurred; Anderson County, Texas, Sheriff Thomas; and TDC guards Glover, Morton, Parker, and Clending. Oliver alleged that on May 4, 1988, the latter four beat him wholly without reason, that Lynaugh and Alford are responsible because they are the superiors of the four guards, and that Lynaugh, Alford, and Sheriff Thomas did not "take any corrective action" when notified by Oliver. Oliver requested damages, declaratory judgment, and a broad array of injunctions.

The magistrate on August 24, 1988, held a hearing under *Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985), and made recommendations. Over Oliver's objections, the district judge adopted the magistrate's report and dismissed the suit.

Oliver's complaint alleges that he was being escorted from his cell to recreation by guards Glover, Parker, and Clending, with his hands handcuffed behind his back. We do not understand Oliver to complain about the fact that he was handcuffed at that time, and that was apparently routine in his situation. The complained of inci-

**58**

dent, according to Oliver's complaint, occurred where they arrived at the "day room" door, near which guard Morton was sitting at a desk. Oliver alleged that at that time, without any provocation or reason whatever, the four guards suddenly and violently threw him to the ground and commenced to viciously push his head to the floor, beat him in the head, face, and eyes with their fists, knee him in the neck and face, bend his little finger back as far as it would go, and jerk his handcuffs, hurting his wrists. Oliver alleged that as a result he had:

"cut and swollen right eye, swollen area around left eye, swollen area at base of hair line in front of head, big swollen area on left side of head at the top, swollen area in back of neck and right shoulder area. Left inter jaw cut and tongue cut left side, and bleeding from nostrill's and my knee on my right leg swollen some, cut's and bruise's on my left and right wrist from to tight hand cuff's ..."

At the *Spears* hearing Oliver maintained, despite careful questioning by the magistrate, that he did absolutely nothing to provoke, and there was nothing in the circumstances to give any possible or arguable reason for, the guards' attack on him or any action on their part with respect to him. Oliver stated inmate witnesses likely would support his story.

A prison doctor present at the *Spears* hearing was asked by the magistrate what the medical records showed and the following transpired:

"DR. LINTHICUM: He was evaluated by an LVN level nurse on 5–4–88. She noted contusion with edema to the left and right side of the face under the eye, a small lump on the right side of the forehead, right wrist there was a small abrasion. And he was given an ice pack to apply to his face. And she also noted that he was very abusive at that time. No other medical treatment was given.

"THE COURT: Are you pretty much healed from that beating?

"MR. OLIVER: Well, I have been having constant pains, heart problem, irregular heart beats.

"THE COURT: Do you think that was caused from the beating?

"MR. OLIVER: Yes.

"THE COURT: What does the medical show, Doctor?

"DR. LINTHICUM: Shortly after that he put in multiple sick call requests complaining of various aches and pains: headache, back ache on 5–12. On 5–20–88, he complained of irregular heart beat. He was examined by a nurse who took his pulse and said it was 80 and regular. The nurse felt it was a subjective complaint. She didn't find any objective evidence for irregularity in his heart beat.

"Let's see. He, again, complained of his heart skipping beats on June 21st. Again, the physical exam did not substantiate this. At this time he was seen by Dr. James Myer from Coffield Unit. He scheduled an EKG, which is an electrocardiogram of his heart. Let's see when that was taken. That was done the same day, and it basically was within normal rhythm. He had a normal sinus rhythm at a rate of 73, and he had specific T wave changes, which don't indicate anything.

"THE COURT: Okay."

Except as reflected in the above, the *Spears* hearing did not shed any light on Oliver's injuries and Oliver was not afforded any opportunity to comment on them or on the medical records.

### Discussion

I. *Claims Against Glover, Morton, Parker, and Clending*

■ In recommending dismissal of the claims against Glover, Morton, Parker, and Clending, the magistrate stated that an indispensable element of Oliver's case was proof that the "officer's action caused *severe* injuries" (emphasis added), citing *Hines v. Boothe*, 841 F.2d 623, 624 (5th Cir.1988), which so states. However, only a few days before the magistrate's report, we had changed the "severe injury" standard to a "significant injury" standard in

*Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir.1989) (en banc), in the Fourth Amendment context, and we subsequently held that "significant injury" was the standard in Eighth Amendment cases. *Huguet v. Barnett*, 900 F.2d 838, 840–41 (5th Cir. 1990). Although the magistrate did state that Oliver "did not sustain a significant injury," in light of the fact that the legal standard she expressly recognized as controlling was "severe injury," we have to assume that she regarded "significant" as meaning just as bad as "severe." However, given the history of *Johnson* and *Huguet*, we must regard "significant" as different from, and imposing at least in some respects a less stringent standard than, "severe."[1] While in other contexts the failure to observe this distinction might not be troublesome, it is here, particularly in light of the nature of the claimed injuries and the surrounding circumstances.

■ We also note that while the magistrate "assumed, without finding, that the alleged assault was unwarranted," nevertheless the magistrate also observed that there was not "any indication of malice." This latter observation was entirely contrary to Oliver's complaint and his testimony at the *Spears* hearing; Oliver's testimony as to how the incident came about was not facially implausible, and indeed nothing at the *Spears* hearing contradicts it. As reflected in Oliver's complaint and testimony, the incident in question was one where no force or action whatever was even apparently necessary; in other words, from the inception the guards were not to any extent attempting to carry out their duties,

but rather simply beat Oliver for entirely personal reasons and in a context wholly divorced from performance of their function as guards. This scenario is different from that of *Anthony v. Lynaugh* (published as an appendix to *Hines v. Boothe*), where we observed that "at least arguably, Anthony [the prisoner-plaintiff] was in an area where he should not have been [he admitted he was in a hall during a period when inmates were required to be inside a cell or dayroom] and was not moving fast enough." *Id.* at 841 F.2d 626. Accepting Oliver's version, as we must, *arguendo*, on this record and for these purposes, nothing comparable can be said here. Rather, this situation may be more like what we were speaking of in *United States v. Bigham*, 812 F.2d 943, 948–49 (5th Cir.1987). This is not to say that in such a case mere "[t]echnical batteries" or "passing thumps" will suffice, *id.* at 949, but obviously Oliver has made some plausible claim of more than that. There must in all these cases be "a significant injury." *Huguet*. But where there is a plausible claim that there was no provocation, and no force or other actions whatever were even apparently called for, and the guards' action was not all in connection with attempting to carry out any arguable employment function but was rather wholly vindictive and punitive from the inception, then our precedents do not foreclose considering these circumstances in determining whether the resultant injury is "significant." *Cf. Johnson v. Morel*, 876 F.2d at 479–80 (noting that plaintiff does not challenge validity of the arrest and handcuffing and that "arrest is inevitably an unpleasant experience"); *Huguet* at 841

---

1. In *Johnson v. Morel*, we held en banc that a showing of mishandling a handcuffed arrestee so as to leave "apparently permanent scars on Johnson's wrists" and to have "disabled him from his employment for about two weeks" met the "significant injury" standard sufficiently to prevent summary judgment against the plaintiff; the *Johnson* panel had held that these injuries did not meet the "severe injury" requirement.

We recognize that there is contrary language in *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir.1990). However, the holding in *Adams*— that the district court *erred* in concluding on the basis of the *Spears* hearing that the prisoner's lacerated fingers requiring sutures did not con-

stitute an injury of sufficient magnitude to invoke Eighth Amendment protection—is fully consistent with our holding here. More generally, *Adams* may be read as holding that "significant" does not imply *greater* magnitude of injury than "severe," a holding entirely consonant with that here. *Adams'* language that "significant" and "severe" are *the same* is essentially dicta, and we believe that aspect of *Adams* can best be understood as directed to the proposition, with which we agree, that in determining whether a particular injury is of sufficient magnitude to invoke Eighth Amendment protection we may properly look to the character of injury involved in *Johnson*, even though *Johnson* was a Fourth Amendment case.

(not passing on whether injury significant, but noting that "[a]ppellant's behavior was recalcitrant and the TDC officers responded with force that was in accord with the need").

The LVN's May 4, 1988 notes are not necessarily inconsistent with a significant injury; Oliver testified on August 24 that since the May 4 incident he had "been having constant pains," and the medical notes after May 4 reflect, in addition to the heart complaints, complaints of "various aches and pains: headache, backache on 5-12." The doctor did not address, at the *Spears* hearing, anything but the heart complaints, and he did not say that Oliver had no significant (or severe) injury. While we are not prepared to say that the magistrate was necessarily bound to assume that Oliver was correct in his opinion that the beating caused him heart problems—after all, Oliver alleged no such matter in his complaint, he did not mention his heart to medical personnel until May 20, he is not a doctor and standard tests apparently showed nothing wrong with his heart—nevertheless, it is not clear that such an assumption is necessary in order for Oliver to have sustained a significant injury.

Because the magistrate erroneously concluded there was no indication of malice, incorrectly applied the "severe" injury test, and did not have the benefit of the en banc opinion in *Johnson v. Morel* or of *Huguet*, we vacate the dismissal of Oliver's section 1983 claims against Glover, Morton, Parker, and Clending, and remand those claims for further proceedings consistent herewith. Because the state law pendent claims against these four defendants were apparently dismissed merely because of the dismissal of the federal claims, we likewise vacate the dismissal of those state law claims and likewise remand them for further proceedings.

II. *Claim Against Thomas for Failure to File Criminal Charges*

■ Oliver's complaint pleads no fact showing an actionable wrong committed by Sheriff Thomas. At the *Spears* hearing Oliver alleged that Thomas refused to file criminal charges against the guards who beat him. Contrary to Oliver's contention,

he does not have a constitutional right to have someone criminally prosecuted. This issue was recently decided in another of Oliver's suits. *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir.1990).

III. *Other Claims*

■ Oliver claims that the negligence of Lynaugh, Alford, and Thomas in failing to protect him from the violence of the other defendants violates due process. Negligence is not a basis of a section 1983 suit. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Even though the court below did not address this claim, it was clearly frivolous.

■ Oliver argues that unspecified TDC officials used a false disciplinary report to cover up the brutality of the beating incident. The only allegations below approximating this claim are that "Officer Glover has submitted a false statement and has asked Officers Morton, Clending and Parker to help him fabricate statements to help him," and that the disciplinary report states that "the Officer [said] that I made a verbal remark, which that is not true." The court below, understandably, did not address a claim of a false disciplinary report. As the claim is, for all practical purposes, raised for the first time on appeal, we will not consider it. *See United States v. Garcia–Pillado*, 898 F.2d 36, 39 (5th Cir.1990).

Oliver argues that the lower court did not rule on his state tort claim of negligence and his "Defamation Libel and Slander Claim." No defamation, libel, and slander claim appears in the record, so no error was committed in this respect. As to the state law negligence claims against Lynaugh and Alford, we assume they were dismissed because of the dismissal of the federal claims, under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Negligence is not a basis for liability under section 1983. *Oliver*, 904 F.2d at 281; *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir.1987). Oliver's section 1983 allegations against Lynaugh and Alford are that they are "responsible for the actions of the officers," the defendants who beat Oliver. This is not sufficient for section 1983 liability.

### Conclusion

We affirm the dismissal of all claims against Thomas. We affirm the dismissal of all federal claims against Lynaugh and Alford; the dismissal of the state law claims against them is modified to be without prejudice. The dismissal of all claims against Glover, Morton, Parker, and Clending is vacated, and as to said defendants the cause is remanded for further proceedings consistent herewith.

AFFIRMED in part; MODIFIED, and AFFIRMED as MODIFIED, in part; VACATED and REMANDED in part.